**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF NEW YORK**

SUSAN-ANN KEIR,

                             Plaintiff,                     1:25-cv-542
                                                    (ECC/TWD)

v.

OFFICER REGINALD DONALDSON,
TOWN OF SHAWANGUNK NEW YORK,
and NEW YORK STATE POLICE,

                             Defendants.

**Appearances:**

Susan-Ann Keir, *Plaintiff, pro se*
Anna R. Wright, Ass't Att. Gen., *for State Defendants*
John C. Burns, Esq., *for Defendant Town of Shawangunk*

**Hon. Elizabeth C. Coombe, United States District Judge:**

## MEMORANDUM-DECISION AND ORDER

### I.    INTRODUCTION

Pro se Plaintiff Susan-Ann Keir commenced this action against Defendants the Town of Shawangunk, New York (Shawangunk), New York State Police Officer Reginald Donaldson (Donaldson), and the New York State Police (the State Police), alleging, among other things, various civil rights violations arising from a traffic stop and arrest. Dkt. No. 1. Presently before the Court is Plaintiff's motion for leave to file an amended complaint, Plaintiff's emergency motion for injunction, and the Defendants' motions to dismiss the Complaint pursuant to Fed. R. Civ. P. 12(b)(1), (b)(2), (b)(5), (b)(6), and (c). Dkt. Nos. 17, 20, 28, 41, 46, 48. The parties have filed responsive papers. Dkt. Nos. 26, 27, 30, 34, 43.

## II.    BACKGROUND

### A.    Procedural History

Plaintiff initiated this lawsuit on May 2, 2025 by filing a complaint. Dkt. No. 1. On May 17, 2025, Plaintiff filed a document titled "Proof of Service by Mail," indicating that the summons and Complaint had been served on the Defendants by certified mail. Dkt. No. 5. Shawangunk requested and was granted an extension of time to June 24th to respond to the Complaint. Dkt. Nos. 7, 9.

Plaintiff filed a letter motion for injunctive relief on June 9, 2025 seeking to enjoin the state court traffic and criminal proceedings associated with the underlying incident giving rise to her Complaint. Dkt. No. 10. The motion was denied on June 20, 2025. Dkt. No. 16.

On June 14, 2025, Plaintiff filed a request for entry of default against Donaldson and the State Police. Dkt. No. 13. The Clerk of the Court determined that Plaintiff's request for entry of default could not be honored due to improper service on these Defendants. Dkt. No. 22.

Plaintiff filed a motion for leave to file an amended complaint on June 23, 2025. Dkt. No. 17. Donaldson and the State Police filed a response to the motion to amend on July 10th, indicating that they "do not take a position regarding this motion as neither defendant . . . [was] properly served." Dkt. No. 26. On July 17th, Plaintiff filed a proof of service indicating that Donaldson had been personally served with the summons on July 16, 2025. Dkt. No. 29. Donaldson confirmed service in a July 23, 2025 letter, and sought clarification as to the operative pleading in light of Plaintiff's pending motion for leave to amend the complaint. Dkt. No. 31. The Court confirmed that the original Complaint remained the operative pleading. Dkt. No. 32.

In the interim, Shawangunk filed a motion to dismiss the Complaint on June 23, 2025. Dkt. No. 20. Donaldson filed an Answer to the Complaint on July 25, 2025, and both Donaldson and the State Police moved to dismiss the Complaint on August 29, 2025. Dkt. Nos. 35, 41.

On September 15, 2025, Plaintiff filed a second motion for injunctive relief, seeking to enjoin her state court traffic and criminal actions while the appeal of a separate federal action seeking removal of those proceedings is pending. Dkt. No. 46.

### B.    Complaint

On April 26, 2025 at approximately 7:30 p.m., Plaintiff was returning home "traveling at around 30 miles per hour" when she saw police lights flashing in her rear view mirror. Dkt. No. 1-2 at 2. Plaintiff continued driving and pulled into her driveway, then "got out of [her] car" and told the police officer "not to trespass on [her] 'private property,' as [she is] a US National with no license, exercising [her] God given Constitutional right to travel freely, and he had no jurisdiction to trespass on [her] 'private property.'" *Id.*

The officer, Defendant Donaldson, "immediately started screaming" at Plaintiff to "get back into [her] car." Dkt. No. 1-2 at 2. Plaintiff "tried again to inform him that he had no jurisdiction, but he just kept screaming over, and over, 'get back in your car.'" *Id.* Plaintiff moved to the back of her car and stood there, stating, "I will stay here." *Id.*

Donaldson continued screaming at Plaintiff to "get back into [her] car." *Id.* Plaintiff "refused," stating that she was on her "private property" and Donaldson had no jurisdiction to be on her "private property." *Id.* Donaldson "continued screaming," and Plaintiff "became frightened as he is a grown man, screaming . . . and giving . . . orders[] without any authority whatsoever, and wearing a gun[.]" *Id.*

Plaintiff got back into her car, at which time she "drove to the top of [her] driveway, and attempted to run into [her] home to escape" Donaldson.  Dkt. No .1-2 at 2.  Donaldson "grabbed [Plaintiff's] left arm, wrenching [her] off of [her] own porch and threw [her] up against [her] daughter['s] car."  *Id.*  Plaintiff "had [her] passport in [her] hand and asked him to scan it," but "he knocked [her] possessions out of [her] hand and would not listen."  *Id.*  He then "grabbed [Plaintiff's] left wrist, that had previously been broken three times, twisted it and tried to force [her] hand behind [her] back."  *Id.*  Plaintiff "screamed that he was hurting [her] arm and breaking it," and "he threw [her] onto the hard pavement of [her] driveway."  *Id.*  They "continued to struggle as [Plaintiff] kept screaming that he was breaking [her] left arm."  *Id.*  Donaldson kneeled on Plaintiff's back, and she "could not breath."  *Id.* at 3.  Plaintiff "finally convinced him to put the cuffs in the front," at which point she was "injured, bloody, and bruised from head to toe."  *Id.*  Donaldson "again grabbed [Plaintiff's] injured arm, and forced [Plaintiff] into the back of his . . . police car."  *Id.*

"Two other Municipal Corporate police from the Town of Shawangunk NY, showed up who aided and abetted in [Plaintiff's] assault, and kidnapping, and informed [Plaintiff] they have a right to trespass on Plaintiff's 'private property.'"  Dkt. No. 1-2 at 3.

Plaintiff was "removed to another location pulled out of the [] police car dragged inside a building and hand cuffed to a bench.  All the while begging to exercise [her] bodily functions[.]"  Dkt. No. 1-2 at 3.  She refused a medical examination, "reiterating [her] need to engage in bodily functions."  *Id.*  After over an hour Plaintiff was "finally allowed" to use the restroom, after which she was again handcuffed to the bench.  *Id.*  "After several hours," Plaintiff "was finger printed, charged with crimes for exercising [her] Constitutional right to travel freely, and finally allowed

to go home." *Id.* at 3.  Plaintiff was "informed" that if she drives her "private automobile" on the roads," that her "'private car' will be impounded." *Id.* at 4.

Plaintiff asserts causes of action pursuant to 42 U.S.C. § 1983 for violations of her Fourth, Fifth, and Eighth Amendment rights. Dkt. No. 1 at 10-11.  Plaintiff further asserts causes of action pursuant to 18 U.S.C. § 241 (conspiracy against rights) and U.S. Const. art. IV, § 2, cl. 1 (right to travel freely). *Id.* at 9-10.  She seeks compensatory and punitive damages. *Id.* at 14.

## III.    PLAINTIFF'S MOTION FOR LEAVE TO AMEND

### A.    Legal Standard

Under Federal Rule of Civil Procedure 15, "[t]he court should freely give leave [to amend] when justice so requires." Fed. R. Civ. P. 15(a)(2). The Second Circuit has held a "district court has discretion to deny leave for good reason, including futility, bad faith, undue delay, or undue prejudice to the opposing party." *McCarthy v. Dun & Bradstreet Corp.*, 482 F.3d 184, 200 (2d Cir. 2007). "[I]t is well established that leave to amend a complaint need not be granted when amendment would be futile." *Ellis v. Chao*, 336 F.3d 114, 127 (2d Cir. 2003). "Amendment is futile where the problems with the complaint's claims are substantive and not the result of inartful pleading," *Biswas v. Rouen*, 808 F. App'x 53, 55 (2d Cir. 2020) (internal quotation marks and alterations omitted), such as when the amended complaint "could not withstand a motion to dismiss." *Balintulo v. Ford Motor Co.*, 796 F.3d 160, 165 (2d Cir. 2015) (internal quotation marks omitted).  Local Rule 15.1(a) requires a party moving to amend a pleading to attach an unsigned copy of the proposed amended pleading to its motion papers.  N.D.N.Y. L.R. 15.1(a).

### B.    Analysis

Plaintiff seeks leave to file an Amended Complaint that substitutes the "Superintendent of the New York State Police, in his official capacity," in place of the "New York State Police."  Dkt.

No. 17 at 1.  Plaintiff has not filed a proposed amended pleading as required by Local Rule 15.1(a).

In any event, Plaintiff's amendment would be futile, because the substitution would not alter the

application of Eleventh Amendment immunity.  "An action against a state official in his official

capacity is deemed an action against the state itself, . . . which possesses sovereign immunity under

the Eleventh Amendment[.]" *Libertarian Party of Erie Co. v. Cuomo*, 970 F.3d 106, 122 (2d Cir.

2020), *abrogated on other grounds by New York State Rifle & Pistol Ass'n, Inc. v. Bruen*, 597 U.S.

1 (2022) (citing *Hafer v. Melo*, 502 U.S. 21, 25 (1991)). "Although the Eleventh Amendment does

not bar a federal court, in adjudicating federal claims against state officials in any capacity, from

granting prospective injunctive relief, . . . a state official sued in his official capacity is entitled to

invoke Eleventh Amendment immunity from a claim for damages[.]" *Id.* at 122-23 (citations

omitted).  In this damages action, Plaintiff's attempt to substitute the Superintendent of the New

York State in his official capacity as a defendant would therefore be futile, thus leave to amend is

denied.  *See MSP Recovery Claims, Series LLC v. Hereford Ins. Co.*, 66 F.4th 77, 90 (2d Cir. 2023)

(noting that a court may, in its discretion, deny leave to amend "for good reason, including

futility").

## IV.    SHAWANGUNK'S MOTION TO DISMISS

### A.    Legal Standard

Shawangunk moves for dismissal pursuant to Federal Rules of Civil Procedure 12(b)(5)

and 12(b)(6).  Dkt. No. 20 at 1.  "When a defendant moves to dismiss the complaint under Fed. R.

Civ. P. 12(b)(5) and 12(b)(6), the court must address the issue of proper service before the alleged

failure to state a claim." *Norwood v. Salvatore*, 3:12-cv-1025 (MAD/DEP), 2013 WL 1499599, at

*2 (N.D.N.Y. Apr. 10, 2013) (citing *Schwasnick v. Fields*, 08-cv-4759, 2010 WL 2679935, at *2

(E.D.N.Y. June 30, 2010)).  "Before a federal court may exercise personal jurisdiction over a

defendant, the procedural requirement of service of summons must be satisfied." *Omni Capital Int'l, Ltd. v. Rudolf Wolff & Co.*, 484 U.S. 97, 104 (1987). "Absent consent, this means there must be authorization for service of summons on the defendant." *Id.* "In considering a Rule 12(b)(5) motion to dismiss for insufficient service of process, a court must look[ ] to matters outside the complaint to determine whether it has jurisdiction." *George v. Pro. Disposables Int'l, Inc.*, 221 F. Supp. 3d 428, 432 (S.D.N.Y. 2016) (quoting *Cassano v. Altshuler*, 186 F. Supp. 3d 318, 320 (S.D.N.Y. 2016)). "[T]he plaintiff bears the burden of establishing that service was sufficient." *Cassano*, 186 F. Supp. 3d at 320 (quoting *Khan v. Khan*, 360 F. App'x 202, 203 (2d Cir. 2010)). A plaintiff must, "through specific factual allegations and any supporting materials, make a prima facie showing that service was proper." *Kwon v. Yun*, No. 05-cv-1142, 2006 WL 416375, at *2 (S.D.N.Y. Feb. 21, 2006) (citations omitted).

To survive a motion to dismiss under Rule 12(b)(6) for failure to state a claim, "a complaint must provide 'enough facts to state a claim to relief that is plausible on its face.'" *Mayor & City Council of Balt. v. Citigroup, Inc.*, 709 F.3d 129, 135 (2d Cir. 2013) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544 (2007)). Mere "labels and conclusions" are insufficient; rather, a plaintiff must provide factual allegations sufficient "to raise a right to relief above the speculative level." *Twombly*, 550 U.S. at 555 (citation omitted). The Court must "accept all factual allegations in the complaint as true and draw all reasonable inferences in favor of the plaintiff." *E.E.O.C. v. Port Auth.*, 768 F.3d 247, 253 (2d Cir. 2014) (citing *ATSI Commc'ns, Inc. v. Shaar Fund, Ltd.*, 493 F.3d 87, 98 (2d Cir. 2007)). Additionally, "the tenet that a court must accept as true all of the allegations contained in a complaint is inapplicable to legal conclusions." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).

B.      **Analysis**

1.      **Personal Jurisdiction and Insufficient Service of Process**

Shawangunk argues that the Complaint should be dismissed due to Plaintiff's insufficient service of process.  Dkt. No. 20-1 at 21-22.  Plaintiff does not meaningfully contest that her attempt to serve Shawangunk via certified mail was procedurally deficient.  Dkt. No. 27 at 17.  However, Plaintiff argues that dismissal is not warranted because Shawangunk was placed on actual notice, and no prejudice has been demonstrated.  *Id.* at 17-18.

Rule 4 of the Federal Rules of Civil Procedure provides that a state, a municipal corporation, or any other state-created governmental organization must be served by (a) "delivering a copy of the summons and of the complaint to its chief executive officer" or (b) "serving a copy of each in the manner prescribed by that state's law for serving a summons or like process on such a defendant." Fed. R. Civ. P. 4(j)(2)(A)–(B).  New York law provides that personal service upon a town "shall be made by delivering the summons . . . to the supervisor or the clerk" of the town. N.Y. C.P.L.R. 311(a)(5).  As an alternative method of personal service, CPLR § 312-a provides for service by mail, but a plaintiff is required to send "by first class mail, postage prepaid, a copy of the summons and complaint . . . together with two copies of a statement of service by mail and acknowledgment of receipt in the form set forth in subdivision (d) of this section, with a return envelope, postage prepaid, addressed to the sender." CPLR § 312-a(a).

Moreover, under Fed. R. Civ. P. 4(d), a plaintiff may notify a defendant "that an action has been commenced and request that the defendant waive service." See Fed. R. Civ. P. 4(d)(1). The request may "be sent by first-class mail or other reliable means," and must "be accompanied by a copy of the complaint, 2 copies of the [required] waiver form . . . , and a prepaid means for returning the form." *See* Fed. R. Civ. P. 4(d)(1)(C), (G). "When the plaintiff files a waiver, proof

of service is not required and [the] rules apply as if a summons and complaint had been served at the time of filing the waiver." Fed. R. Civ. P. 4(d)(4).

"It is well established that pro se plaintiffs are not excused from complying with procedural rules." *Frezzell v. New York State Dep't of Labor*, 1:14-cv-0729 (LEK/ATB), 2016 WL 796063, at *3 (N.D.N.Y. Feb. 24, 2016). A court, however, is expected to "take appropriate measures to permit the adjudication of pro se claims on the merits, rather than to order their dismissal on technical grounds." *Id*. (citation omitted). "Rule 4 of the Federal Rules is to be construed liberally to further the purpose of finding personal jurisdiction in cases in which the party has received actual notice." *Jaiyeola v. Carrier Corp.*, 73 F. App'x 492, 494 (2d Cir. 2003) (internal citations and quotation marks omitted). When "it appears that proper service may still be obtained," the Second Circuit cautions against dismissal. *Id*. In light of this guidance, district courts in this Circuit often give pro se litigants a chance to serve defendants properly before dismissing their cases. *See, e.g., Kennedy v. Peters*, No. 6:23-cv-195, 2023 WL 5977237, at *3 (N.D.N.Y. Sept. 14, 2023) ("But when it comes to technical problems with service, the Second Circuit has held that pro se plaintiffs should be granted special leniency . . . . In short, dismissal is an inappropriate remedy if it appears that proper service may still be obtained." (internal citations and quotation marks omitted)); *May v. Levy*, 659 F. Supp. 3d 323, 334 (E.D.N.Y. 2023) (providing pro se plaintiff an opportunity to properly serve defendants after improper service); *Doe v. Becerra*, No. 2:23-cv-00178, 2024 WL 3640636, at *2 (D. Vt. May 7, 2024) ("In light of Plaintiff's self-represented status, the court grants a further extension of the time to serve process."); *Jones v. Westchester Cnty.*, 182 F. Supp. 3d 134, 146 (S.D.N.Y. 2016) (allowing pro se plaintiff a second chance to serve defendants properly when defendant had actual notice of claim and would not be prejudiced by extending time to serve).

Here, Plaintiff attempted service on Shawangunk, and Shawangunk does not argue that it did not receive actual notice of the case. Moreover, Shawangunk has not articulated any prejudice resulting from the insufficient service. On these facts, and in light of the Second Circuit's preference to adjudicate claims on the merits, the Court declines to dismiss the Complaint as against Shawangunk for lack of service. As discussed below, the Complaint is otherwise subject to dismissal as against Shawangunk. Accordingly, the Court need not determine the appropriate remedy for Plaintiff's insufficient service at this time.

### 2.   18 U.S.C. § 241

Shawangunk argues that Plaintiff's claim pursuant to an alleged violation of 18 U.S.C. § 241 should be dismissed because there is no private right of action for purported violations of federal criminal statutes such as § 241. Dkt. No. 20-1 at 13. In her response, Plaintiff maintains that she does not assert a standalone claim under § 241, but that courts have recognized that "referencing § 241 may help support a civil rights claim when used to demonstrate conspiratorial conduct or retaliatory intent." Dkt. No. 27 at 9. Shawangunk is correct that Plaintiff cannot maintain a private right of action pursuant to § 241. *See Hill v. Didio*, 191 F. App'x 13, 14 (2d Cir. 2006) (no private right of action for 18 U.S.C. §§ 241, 242); *Xu v. Neubauer*, 166 F. Supp. 3d 203, 207 (D. Conn. 2015) (finding no private right of action in a case in which plaintiff was attempting to enforce, among other statutes, § 241). Thus, Shawangunk's unopposed motion to dismiss Plaintiff's claims pursuant to § 241 is granted.

Plaintiff does not specifically articulate a claim of civil conspiracy to deprive her of her constitutional rights under 42 U.S.C. § 1983. Even if such a claim were construed by the Court, Plaintiff's vague and conclusory allegations are insufficient. "To prove a § 1983 conspiracy, a plaintiff must show: (1) an agreement between two or more state actors or between a state actor

and a private entity; (2) to act in concert to inflict an unconstitutional injury; and (3) an overt act done in furtherance of that goal causing damages." *Pangburn v. Culbertson*, 200 F.3d 65, 72 (2d Cir. 1999). "[C]omplaints containing only conclusory, vague, or general allegations that the defendants have engaged in a conspiracy to deprive the plaintiff of h[er] constitutional rights are properly dismissed; diffuse and expansive allegations are insufficient, unless amplified by specific instances of misconduct." *Marquez v. Hoffman*, No. 18-cv-7315, 2021 WL 1226981, at *23 (S.D.N.Y. Mar. 31, 2021) (quoting *Ciambrello v. Cnty. of Nassau*, 292 F.3d 307, 325 (2d Cir. 2002)).

Here, Plaintiff's Complaint "is devoid of facts as to the time, place, or objective of [any] alleged conspiracy." *Burroughs v. Mitchell*, 325 F. Supp. 3d 249, 283 (N.D.N.Y. Sept. 6, 2018). Plaintiff has also failed to include allegations supporting a "meeting of the minds" among any of the Defendants. *See Brill v. Ulster Cnty.*, No. 1:24-cv-1026 (AMN/PJE), 2025 WL 2531415, at *4 (N.D.N.Y. Sept. 3, 2025) (quoting *Kiryas Joel Alliance v. Vill. of Kiryas Joel*, 495 F. App'x 183, 190 (2d Cir. 2012) ("[A] plaintiff must provide some factual basis supporting a meeting of the minds, such that defendants entered into an agreement, express or tacit, to achieve the unlawful end."). Accordingly, Plaintiff's allegations are insufficient to state a claim upon which relief could be granted.

### 3.    U.S. Const. art. IV, § 2, cl. 1

Shawangunk argues that Plaintiff's allegations of an infringement on her right to travel are not based upon actionable constitutional violations. Dkt. No. 20-1 at 20-21. Plaintiff does not squarely address this argument, nor does she articulate how Shawangunk may be held liable under the underlying facts. Plaintiff does, however, reiterate that the "right to travel is part of the liberty of which the citizen cannot be deprived without due process of law." Dkt. No. 27 at 15.

Liberally construed, Plaintiff's claim is that the Defendants have infringed on her right to travel by enforcing New York traffic laws against her, including the licensing and registration requirements to operate a vehicle on public roads. "The Constitution protects a fundamental right to travel within the United States," which the Second Circuit has also called "the right to free movement." *Selevan v. N.Y. Thruway Auth.*, 584 F.3d 82, 99 (2d Cir. 2009). A state law implicates this right only "when it actually deters such travel, when impeding travel is its primary objective, or when it uses any classification which serves to penalize the exercise of that right.'" *Id.* (quoting *Att'y Gen. of N.Y. v. Soto-Lopez*, 476 U.S. 898, 903 (1986) (internal quotation marks and citations omitted)).

It is well settled that Plaintiff's ability to travel by motor vehicle on New York's roads is not a privilege protected by the Constitution. *See Town of Southold v. Town of E. Hampton*, 477 F.3d 38, 54 (2d Cir. 2007) ("[T]ravelers do not have a constitutional right to the most convenient form of travel, and minor restrictions on that travel simply do not amount to the denial of a fundamental right[.]") (citation omitted); *see also Estell El ex rel. Whitaker v. City of Greensboro, N.C.,* No. 1:22-cv-48, 2022 WL 2915473, at *2 (M.D.N.C. July 12, 2022), *aff'd*, No. 22-1790, 2022 WL 17581957 (4th Cir. Dec. 12, 2022) ("The constitutional right to travel gives a United States citizen the right to travel from one State to another, but it is not, as Ms. Estell El seems to think, a right to travel in any manner, without regulation, and it does not provide travelers a right to ignore state traffic laws.") (cleaned up); *Miller v. Reed*, 176 F.3d 1202, 1205 (9th Cir. 1999) (stating that "burdens on a single mode of transportation do not implicate the right to interstate travel"); *City of Houston v. F.A.A.*, 679 F.2d 1184, 1198 (5th Cir. 1983) (noting that there is no "constitutional right to the most convenient form of travel")).

Furthermore, the legal theories advanced by Plaintiff – that she did not need a New York State driver's license or registered vehicle to drive on New York roadways – have been repeatedly recognized as frivolous. *See, e.g., Perkins v. Ivey*, 772 F. App'x 245, 246 (5th Cir. 2019) (denying "sovereign citizen" claims of no duty to have a driver's license or vehicle registration because the Supreme Court established "long ago that states may regulate the operation of all motor vehicles that drive within their borders," including the licensing and registration of drivers "pursuant to their constitutionally protected police power.")(citing *Hendrick v. Maryland*, 235 U.S. 610, 622 (1915)); *Van Horne v. Valencia*, No. 1:21-cv, 2022 WL 3574299, at *5 (N.D. Tex. Feb. 16, 2022), *report and recommendation adopted*, 2022 WL 2800878 (N.D. Tex. July 18, 2022) ("Van Horne continues to assert that he possesses a constitutional and God-given right to travel on the roads of the State of Texas without having to comply with the laws of the State of Texas. These arguments derive from the so-called sovereign citizen movement and are legally frivolous.") (cleaned up).

Plaintiff challenges any argument that her allegations are frivolous to the extent they are associated with the "sovereign citizen" movement, claiming that she "does not espouse fringe ideology." Dkt. No. 27 at 15. Nevertheless, Plaintiff's filings are permeated with such inferences, including Plaintiff's allegations that the state courts lack constitutional legitimacy and therefore have no authority to regulate her behavior; her reliance on the U.C.C.; and her appearance in this action as a "natural person" versus a "fictitious entity." Such legal theories are consistently rejected by federal courts as patently frivolous. *Paul v. New York*, No. 13-cv-5047, 2013 WL 5973138, at *3 (E.D.N.Y. Nov. 5, 2013) ("Contrary to plaintiff's contentions, sovereign citizens, like all citizens of the United States, are subject to the laws of the jurisdiction in which they reside. Plaintiff's purported status as a sovereign citizen does not enable him to violate state and federal laws without consequence.") (cleaned up); *see also Linge v. State of Georgia Inc.*, 569 F. App'x

895, 896 (11th Cir. 2014) (finding the sovereign citizen argument to be to "wholly insubstantial and frivolous"); *United States v. Hilgeford*, 7 F.3d 1340, 1342 (7th Cir. 1993) (rejecting sovereign citizen argument as "shop worn" and frivolous); *Williams v. U.S.*, No. 5:21-cv-00061, 2021 WL 1239810, at *2 (M.D. Ga. Apr. 2, 2021) ("It is plain on the face of Plaintiff's Complaint that his claims are brought under a sovereign citizen theory. This is a frivolous legal theory that is consistently rejected by federal courts.") (cleaned up); *Santiago v. Century 21/PHH Mortgage*, No. 1:12-cv-02792, 2013 WL 1281776, at *5 (N.D. Ala. Mar. 27, 2013) ("The . . . theories of 'sovereign citizens' are not established law in this court or anywhere in this country's valid legal system.").

For these reasons, Shawangunk's motion to dismiss Plaintiff's claims for violations of her constitutional right to travel is granted.

### 4.    42 U.S.C. § 1983

Shawangunk seeks dismissal of Plaintiff's claims alleging violations of the Fourth, Fifth, and Eighth Amendments pursuant to 42 U.S.C. § 1983 on the following bases: (1) there can be no *Monell* liability against the municipality in the absence of an underlying tort, (2) Plaintiff relies on improper group pleading and fails to provide notice of the allegedly unconstitutional conduct of the Shawangunk officers, and (3) Plaintiff fails to plausibly allege violations of each constitutional amendment. Dkt. No. 20-1 at 10-11, 13-18.

Municipal liability is limited under § 1983 by *Monell v. Dep't of Soc. Servs. of City of New York*. In *Monell*, the Supreme Court found that municipal liability existed "where that organization's failure to train, or the policies or customs that it has sanctioned, led to an independent constitutional violation." *Segal v. City of New York*, 459 F.3d 207, 219 (2d Cir. 2006). In order to successfully state a claim for *Monell* liability, a plaintiff must "make factual allegations

that support a plausible inference that the [alleged] constitutional violation took place pursuant either to a formal course of action officially promulgated by the municipality's governing authority or the act of a person with policymaking authority for the municipality." *Missel v. Cnty. of Monroe*, 351 F. App'x 543, 545 (2d Cir. 2009) (citing *Vives v. City of N.Y.*, 524 F.3d 346, 350 (2d Cir. 2008)). "Absent such a custom, policy, or usage, a municipality cannot be held liable on a respondeat superior basis for the tort of its employee." *Jones v. Town of East Haven*, 691 F.3d 72, 80 (2d Cir. 2012); *see also Los Angeles County, Cal. v. Humphries*, 562 U.S. 29, 36 (2010) ("[I]n *Monell* the Court held that 'municipality cannot be held liable' solely for the acts of others, e.g., 'solely because it employs a tortfeasor.'" (quoting *Monell*, 436 U.S. at 691)); *Sims v. City of New York*, No. 15-cv-2485, 2018 WL 11605048, at *4 (S.D.N.Y. Dec. 17, 2018) ("*Monell* . . . does not conclude that plaintiffs may hold municipalities liable under separate causes of action—there must be an underlying constitutional violation that occurred because of the municipality's unconstitutional custom or policy. . . . When there is no underlying constitutional violation, therefore, there can be no municipal liability under *Monell*." (citing, among others, *Segal*, 459 F.3d at 219)), *aff'd*, 788 F. App'x 62 (2d Cir. 2019)).

The existence of a municipal policy or custom may be pled in any of four ways: "(1) a policy formally adopted and endorsed by the municipality; (2) actions taken by policymaking officials that caused the particular deprivation alleged; (3) practices by subordinate officials that are not expressly authorized but are so widespread and consistent that policymakers must have been aware of them; or (4) a failure by policymakers to train or supervise that amounts to deliberate indifference to the rights of those who come into contact with the inadequately trained or supervised municipal employees." *Crawley v. City of Syracuse*, 496 F. Supp. 3d 718, 729 (N.D.N.Y. 2020) (internal quotation marks omitted) (citing *Deferio v. City of Syracuse*, 770 F.

App'x 587, 589 (2d Cir. 2019)). "Once a plaintiff has demonstrated the existence of a municipal policy, a plaintiff must then establish a causal connection, or an 'affirmative link,' between the policy and the deprivation of his constitutional rights." *Deferio*, 770 F. App'x at 590 (citing *Vippolis v. Vill. of Haverstraw*, 768 F.2d 40, 44 (2d Cir. 1985)). "Boilerplate statements" that county employees were acting in accord with a municipal policy, with no facts to support those statements, are not sufficient to support a *Monell* claim. *See Brown v. Oneida Cnty.*, No. 6:15-cv-0849, 2016 WL 4275727, at *4 (N.D.N.Y. Aug. 12, 2016).

Here, Plaintiff's allegations of *Monell* liability against Shawangunk are based on a "failure to train" theory. Dkt. No. 1 at 12-13. However, the majority of these claims are patently meritless on their face. Specifically, Plaintiff alleges liability to the extent that Shawangunk trains their law enforcement officers (1) "that they can interact with the people engaged in their God given Constitutional right to travel freely, without the proper jurisdiction to do so, and no crime having been committed," (2) "that they have the right to enter 'private property", without a warrant, or proper jurisdiction," (3) "to use statutes, and codes, that are not valid laws, and apply to fictions only," and (4) "that because the Governmental agencies built the roads, and maintain them, that they have the right to enforce unconstitutional traffic code, and any other rules as they see fit." Dkt. No. 1 at 12-13. As further set forth below in the analysis of Donaldson and the State Police's motion to dismiss, these frivolous allegations do not amount to underlying constitutional violations under the Fourth, Fifth, or Eighth Amendment. Thus, *Monell* liability may not attach.

Plaintiff also alleges that Shawangunk trains their law enforcement officers to "make use of excessive force to restrain [people], kneeling on their backs, preventing them from breathing, etc.," in violation of individuals' constitutional rights. Dkt. No. 1 at 12. As a threshold matter, Plaintiff has failed to adequately allege that she suffered an underlying violation of her

constitutional rights in connection with the unnamed Shawangunk officers' alleged failure to intervene in Donaldson's alleged use of force. "[L]aw enforcement officials have an affirmative duty to intervene to protect the constitutional rights of citizens from infringement by other law enforcement officers in their presence." *Terebesi v. Torreso*, 764 F.3d 217, 243 (2d Cir. 2014) (quoting *Anderson v. Branen*, 17 F.3d 552, 557 (2d Cir. 1994) (collecting cases)). "A non-intervening police officer becomes liable when 'such failure permitted fellow officers to violate . . . clearly established statutory or constitutional rights of which a reasonable person would have known.'" *Berg v. Kelly*, 897 F.3d 99, 113 (2d Cir. 2018) (quoting *Ricciuti v. N.Y.C. Trans. Auth.*, 124 F.3d 123, 129 (2d Cir. 1997)). To state a claim for failure to intervene, a plaintiff must adequately plead that: (1) an officer other than the defendant used excessive force; (2) the defendant had a realistic opportunity to intervene and prevent the harm; (3) a reasonable person in the defendant's shoes would have known that the victim's constitutional rights were being violated; and (4) the defendant did not take reasonable steps to intervene. *Pierce v. City of New York*, 293 F. Supp. 3d 306, 313 (E.D.N.Y. 2017).

In addition, personal involvement is an essential element of any claim brought under § 1983. *Grullon v. City of New Haven*, 720 F.3d 133, 138 (2d Cir. 2013) (citations omitted); *see also Tangreti v. Bachmann*, 983 F.3d 609, 618 (2d Cir. 2020). Thus, "a plaintiff must . . . prove 'that each Government-official defendant, through the official's own individual actions, has violated the Constitution.'" *Tangreti*, 983 F.3d at 618 (quoting *Ashcroft v. Iqbal*, 556 U.S. 662, 676 (2009)).

Liberally construed, Plaintiff's Complaint suggests that two Shawangunk officers "showed up" to her home *after* she was placed in the back of Donaldson's police car. Dkt. No. 1-2 at 4. However, Plaintiff also alleges that the Shawangunk officers "aided and abetted in [her] assault, and kidnapping, and informed [her] they have a right to trespass on [her] 'private property.'" *Id.*

Plaintiff alleges she was "dragged inside a building" from the police car, but does not articulate by whom or who was present. *Id.* These allegations fail to plausibly allege an underlying constitutional violation forming the basis for *Monell* liability on the part of Shawangunk. If the Shawangunk officers did, in fact, arrive after Plaintiff was placed in the vehicle, then there is no basis to infer that they had a realistic opportunity to intervene in any preceding use of excessive force. Otherwise, Plaintiff's vague and conclusory allegations are insufficient to establish the personal involvement of the Shawangunk officers in a purported failure to intervene. *See Hilton v. Caringi*, No. 9:23-cv-0209 (MAD/CFH), 2023 WL 12118127, at *5 (N.D.N.Y. Mar. 29, 2023) (dismissing failure to intervene claim due to "vague and conclusory allegations," and the absence of allegations "describing defendants' conduct or allegations indicating where the assault occurred . . . or how long the assaults lasted."); *Anderson v. City of Mount Vernon*, No. 23 Civ. 3963, 2024 WL 2158390, at *5 (S.D.N.Y. May 13, 2024).

Furthermore, even if Plaintiff had sufficiently articulated an underlying violation of her constitutional rights by the Shawangunk officers, a "municipality's culpability for a deprivation of rights is at its most tenuous where a claim turns on a failure to train." *Connick v. Thompson*, 563 U.S. 51, 61 (2011); *see also City of Canton, Ohio v. Harris*, 489 U.S. 378, 379 (1989) (noting that if federal courts engage "in an endless exercise of second-guessing municipal employee-training programs" it would "implicate serious questions of federalism"). As the Supreme Court has observed, "plainly, adequately trained officers occasionally make mistakes; the fact that they do says little about the training program or the legal basis for holding the city liable." *Canton, Ohio* 489 U.S. at 391; *see also Hernandez v. United States*, 939 F.3d 191, 207 (2d Cir. 2019) ("Allegations that the injury could have been avoided with 'better or more training' are not sufficient") (quotation omitted); *Reynolds v. Giuliani*, 506 F.3d 183, 193 (2d Cir. 2007) (citing

*Young v. City of Providence ex rel. Napolitano*, 404 F.3d 4, 27 (1st Cir.2005)) ("A training program must be quite deficient in order for the deliberate indifference standard to be met; the fact that training is imperfect or not in the precise form a plaintiff would prefer is insufficient to make such a showing").

At the motion to dismiss stage, "[w]hile it may be true that § 1983 plaintiffs cannot be expected to know the details of a municipality's training programs prior to discovery, this does not relieve them of their obligation under *Iqbal* to plead a facially plausible claim." *Simms v. City of New York*, 480 F. App'x 627, 631 n.4 (2d Cir. 2012); *see also Smith v. Collins*, No. 15-cv-216, 2016 WL 817473, *2 (S.D.N.Y. Feb. 26, 2016) ("Following *Iqbal* and *Twombly*, . . . the Second Circuit has indicated that some non-conclusory allegation as to deficient training programs is necessary at the pleading stage"). A plaintiff can meet his or her pleading obligation "by alleging facts indicating '[a] pattern of similar constitutional violations by untrained [municipal] employees.'" *Simms,* 480 F. App'x at 631 n.4; *see also Durr v. Slator*, 558 F. Supp. 3d 1, 36 (N.D.N.Y. Sept. 2, 2021) (holding that, "[i]n order for Plaintiff to succeed on his failure to train and failure to discipline theories, there must be a pattern of similar misconduct"). "[W]ithout notice that a course of training is deficient in a particular respect, decisionmakers can hardly be said to have deliberately chosen a training program that will cause violations of constitutional rights." *Connick*, 563 U.S. at 62.

Here, Plaintiff has failed to plead a facially plausible failure-to-train claim against Shawangunk. Plaintiff alleges that Shawangunk trains its officers to make use of excessive force to restrain individuals. Dkt. No. 1 at 12. Even assuming this allegation sufficiently identifies a specific training deficiency, there are no plausible allegations that Shawangunk was on actual or constructive notice that its training was allegedly deficient at the time of the underlying incident.

Specifically, Plaintiff has not provided any non-conclusory factual detail regarding a pattern of similar misconduct. Instead, Plaintiff relies on her own, isolated experience with Shawangunk as the basis for finding that Shawangunk has a policy of affirmatively training its officers to violate the Constitution. In the absence of any further factual enhancement, "a single incident of errant behavior is an insufficient basis for finding that a municipal policy caused [P]laintiff's injury." *Kelly v. Ulster Cnty.*, N.Y., No. 1:12-cv-1344, 2013 WL 3863929, *4 (N.D.N.Y. July 24, 2013) (citations omitted); *see also Harris*, 489 U.S. at 390-91 ("That a particular officer may be unsatisfactorily trained will not alone suffice to fasten liability on the city, for the officer's shortcomings may have resulted from factors other than a faulty training program . . . . It may be . . . that an otherwise sound program has occasionally been negligently administered").

In sum, Plaintiff has failed to plausibly allege both an underlying constitutional violation by the Shawangunk officers and a custom or policy to support municipal liability. Therefore, Shawangunk's motion to dismiss Plaintiff's claims pursuant to 42 U.S.C. § 1983 is granted.

## V.     THE STATE POLICE AND DONALDSON'S MOTION TO DISMISS

### A.     Legal Standard

The State Police and Donaldson move for dismissal pursuant to Federal Rules of Civil Procedure 12(b)(1), 12(b)(2), (12(b)(5) and 12(b)(6).[1] "A federal court generally may not rule on the merits of a case without first determining that it has jurisdiction over the category of claim in suit (subject-matter jurisdiction) and the parties (personal jurisdiction)." *Sinochem Int'l Co. Ltd. v. Malaysia Int'l Shipping Corp.*, 549 U.S. 422, 430-31 (2007). "In resolving a motion to dismiss under Rule 12(b)(1), the district court must take all uncontroverted facts in the complaint (or

---

[1] For the sake of brevity, the Court will not reiterate the legal standards previously set forth in this decision.

petition) as true, and draw all reasonable inferences in favor of the party asserting jurisdiction." *Tandon v. Captain's Cove Marina of Bridgeport, Inc.*, 752 F.3d 239, 243 (2d Cir. 2014) (citation omitted). The Court may also "refer to evidence outside the pleadings" and "take judicial notice of documents in the public record, including state court filings." *Krajisnik Soccer Club Inc. v. Krajisnik Football Club, Inc.*, No. 6:20-cv-1140(LEK/TWD), 2021 WL 2142924, at *2 (N.D.N.Y. May 26, 2021)(citations omitted).  Here, the State Police's motion for dismissal due to lack of personal jurisdiction pursuant to Rule 12(b)(2) is tethered to its claim of inadequate service pursuant to Rule 12(b)(5).

Donaldson moves for dismissal pursuant to Rule 12(c).  "The same standard applicable to Fed. R. Civ. P. 12(b)(6) motions to dismiss applies to Fed. R. Civ. P. 12(c) motions for judgment on the pleadings." *Bank of N.Y. v. First Millennium, Inc.*, 607 F.3d 905, 922 (2d Cir. 2010). Thus, "[t]o survive a Rule 12(c) motion, the complaint 'must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face.'" *Id*. (quoting *Hayden v. Paterson*, 594 F.3d 150, 160 (2d Cir. 2010)). "Although a complaint need not contain detailed factual allegations, it may not rest on mere labels, conclusions, or a formulaic recitation of the elements of the cause of action, and the factual allegations 'must be enough to raise a right to relief above the speculative level.'" *Lawtone-Bowles v. City of New York*, No. 16-cv-4240, 2017 WL 4250513, at *2 (S.D.N.Y. Sept. 22, 2017) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007)). The Court will grant a motion for judgment on the pleadings "if, from the pleadings, the moving party is entitled to judgment as a matter of law." *VCG Special Opportunities Master Fund Ltd. v. Citibank, N.A.*, 594 F. Supp. 2d 334, 340 (S.D.N.Y. 2008). "On a 12(c) motion, the court considers 'the complaint, the answer, any written documents attached to them, and any matter of which the court can take

judicial notice for the factual background of the case.'" *L-7 Designs, Inc. v. Old Navy, LLC*, 647 F.3d 419, 422 (2d Cir. 2011) (quoting *Roberts v. Babkiewicz*, 582 F.3d 418, 419 (2d Cir. 2009)).

**B.    Analysis**

**1.    Personal Jurisdiction and Insufficient Service of Process – the State Police**

The State Police argue that due to Plaintiff's deficient service of process, the Complaint should be dismissed as against it for lack of personal jurisdiction.  Dkt. No. 41-1 at 16.  Plaintiff does not address the State Police's argument that service was improper, but notes that her motion to amend the Complaint seeks to substitute this party with another entity.  Dkt. No. 43 at  5.

The Court agrees that Plaintiff's attempt to serve the State Police by mail was insufficient under the relevant rules.  Nevertheless, as previously set forth, the Court is not inclined to dismiss based on a lack of personal jurisdiction due to insufficient service of process, where a pro se Plaintiff has made an attempt at service, and the Defendant has been put on notice.  Accordingly, the State Police's motion to dismiss for lack of personal jurisdiction based on service defects is denied.  Because the Court is dismissing the Complaint as against the State Police on other bases, including Eleventh Amendment immunity, the Court need not determine the appropriate remedy for Plaintiff's insufficient service on the State Police.

**2.    18 U.S.C. § 241**

The State Police and Donaldson argue that Plaintiff's claims pursuant to an alleged violation of 18 U.S.C. § 241 should be dismissed because there is no private right of action for purported violations of federal criminal statutes such as § 241.  Dkt. No. 41-1 at 18-20.  Plaintiff does not meaningfully address the defendants' motion to this extent.  For the reasons previously set forth, the State Police and Donaldson's motion to dismiss Plaintiff's § 241 claims is granted.

### 3.   U.S. Const. art. IV, § 2, cl. 1

The State Police and Donaldson argue that Plaintiff's claims surrounding a violation of her right to travel should be dismissed for failure to state a claim.  Dkt. No. 41-1 at 20-24.  Plaintiff argues that New York State Vehicle and Traffic Laws and related administrative codes "are not constitutional laws," and their application to Plaintiff "constitutes a jurisdictional fraud and violation of constitutional boundaries."  Dkt. No. 43.  As previously discussed, the legal theories and bases on which Plaintiff rests her "right to travel" claims have been consistently determined to be frivolous by the courts.  Accordingly, the State Police and Donaldson's motion to dismiss Plaintiff's "right to travel" claims is granted.

### 4.   42 U.S.C. § 1983

### i.   The State Police and Donaldson in his Official Capacity

Defendants argue that Plaintiff's various claims for damages under 42 U.S.C. 1983 against the State Police and Donaldson in his official capacity must be dismissed as barred by the Eleventh Amendment.  Dkt. No. 41-1 at 15-16.  Plaintiff argues that Eleventh Amendment immunity "cannot be used to shield unconstitutional acts."  Dkt. No. 43 at 6.  Plaintiff, however, recognizes that the New York State Police is "not recognized as a suable entity" in her motion to amend.  Dkt. No. 17 at 2.

"The Eleventh Amendment generally bars suits in federal court by private individuals against non-consenting states and damages claims against state agencies and individual state defendants in their official capacities."  *Oliver v. New York State Police*, No. 1:15-cv-00444 (BKS/DJS), 2020 WL 1989180, at *45 (N.D.N.Y. Apr. 27, 2020) (cleaned up), *aff'd sub nom. Oliver v. D'Amico*, No. 22-979, 2024 WL 2013670 (2d Cir. May 7, 2024).  Congress did not abrogate the Eleventh Amendment immunity granted to the states when it enacted 42 U.S.C. §

1983, and New York has not waived it. *Jackson v. Ramirez*, 691 F. App'x 45, 46 (2d Cir. 2017); *see also Walker v. NYS Justice Ctr. for the Prot. of People with Special Needs*, 493 F. Supp. 3d 239, 246 (S.D.N.Y. 2020) ("Congress did not abrogate the States' sovereign immunity when it enacted §§ 1983 and 1985, and New York has not waived its immunity." (citing, among others, *Mamot v. Bd. of Regents*, 367 F. App'x 191, 192 (2d Cir. 2010))).

The Eleventh Amendment's immunity extends to the New York State Police as an agency of the State of New York. *See, e.g., Riley v. Cuomo*, No. 2:17-cv-01631, 2018 WL 1832929, *4 (E.D.N.Y. Apr. 16, 2018) (holding that the New York State Police, as a division in the executive department of the State, is immune from claims under § 1983); *Finkelman v. New York State Police*, No. 06 Civ. 8705, 2007 WL 4145456, *3 (S.D.N.Y. Nov. 15, 2007) (holding that the Eleventh Amendment barred the plaintiff's suit seeking monetary damages under § 1983 against New York State Police) (citing *Morrongiello v. Ashcroft*, No. 01 Civ. 2524, 2004 WL 112944, (S.D.N.Y. Jan. 22, 2004)). Furthermore, the New York State Police is not a person subject to suit under § 1983. *See Lilly v. Cullen*, No. 15-cv-874A(F), 2017 WL 1273972, *3 (W.D.N.Y. Mar. 14, 2017) (citing *Will v. Michigan Dep't of State Police*, 491 U.S. 58, 65 (1989)).

Based on the foregoing, the Defendants' motion to dismiss Plaintiff's 42 U.S.C. § 1983 claims against the State Police and Donaldson in his official capacity are granted. Plaintiff seeks only damages in her claims against the State Police and Donaldson in his official capacity, thus Plaintiff's claims are barred by the doctrine of sovereign immunity.

### ii.    Donaldson in his Individual Capacity

Defendants argue that the remaining § 1983 claims asserted against Donaldson in his individual capacity should also be dismissed. The Court will address each alleged violation in turn.

### a.    Fourth Amendment – False Arrest

Liberally construed, Plaintiff's Complaint and accompanying exhibits allege that Donaldson violated her Fourth Amendment rights when he (1) trespassed on her property without a warrant, (2) unlawfully detained her without proper justification, and (3) kidnapped her when transporting her off her property.  Dkt. No. 1 at 10.

The Fourth Amendment guarantees "[t]he right of the people to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures." U.S. Const. amend. IV. "Temporary detention of individuals during the stop of an automobile by the police, even if only for a brief period and for a limited purpose, constitutes a 'seizure' of 'persons' within the meaning of [the Fourth Amendment]." *Whren v. United States*, 517 U.S. 806, 809–10 (1996) (quoting U.S. Const. amend. IV). "Therefore, traffic stops must satisfy the Fourth Amendment's reasonableness limitation, which 'requires that an officer making a traffic stop have probable cause or reasonable suspicion that the person stopped has committed a traffic violation or is otherwise engaged in or about to be engaged in criminal activity.'"  *United States v. Gomez*, 877 F.3d 76, 86 (2d Cir. 2017) (quoting *United States v. Stewart*, 551 F.3d 187, 191 (2d Cir. 2009)).  Even a "minor" traffic violation meets this standard. *United States v. Scopo*, 19 F.3d 777, 782 (2d Cir. 1994).

Investigative stops can lead to lawful arrests where "the existence of a probable cause sufficient to support an arrest . . . develop[s] during the course of a stop based on reasonable suspicion." *U.S. v. Oates*, 560 F.2d 45, 62 (1977); *see also United States v. Brockington*, 378 F. App'x 90, 91 (2d Cir. 2010) ("reasonable suspicion may develop into probable cause based on events unfolding during an investigative stop" (citing *United States v. Vasquez*, 638 F.2d 507, 522 (2d Cir. 1980)). An officer has probable cause to arrest someone when the officer has "reasonably trustworthy information as to [the] facts and circumstances that are sufficient to warrant a person

of reasonable caution in the belief that an offense has been or is being committed by the person to be arrested." *Zellner v. Summerlin*, 494 F.3d 344, 368 (2d Cir. 2007).

Here, beyond admitting her general belief that she is not subject to the vehicle and traffic laws of the state of New York, Plaintiff does not plausibly allege that Donaldson lacked reasonable suspicion or probable cause to initiate a traffic stop of her vehicle, or ultimately arrested her without probable cause.  Plaintiff does not specifically allege why the traffic stop was initiated in her Complaint.[2]  Plaintiff does, however, admit that she was driving in violation of at least two vehicle and traffic laws, including driving a motor vehicle without a license in violation of New York Vehicle and Traffic Law § 509(1), and operating an unregistered vehicle in violation of New York Vehicle and Traffic Law § 401.  Dkt. Nos. 1 at 11; 1-2 at 2.  Thus, any claims that Donaldson lacked probable cause to ultimately arrest Plaintiff are wholly unsupported, defeating any claims related to false arrest, illegal detention, or "kidnapping" to the extent Plaintiff was transported to the police station incident to her arrest. *See United States v. White*, 298 F. Supp. 3d 451, 458 (E.D.N.Y. 2018) ("As the Supreme Court and Second Circuit have made clear, an arrest is constitutionally proper even for minor traffic offenses."); *see also Thompson v. Kline*, 504 F. Supp. 3d 200, 208, 213 (W.D.N.Y. 2020) (recognizing that the existence of probable cause is a "complete defense" to claims for false arrest and malicious prosecution).

To the extent Plaintiff alleges a constitutional violation stemming from Donaldson's presence in her driveway during the traffic stop, this claim likewise fails.  As a general matter, "'driveways that are readily accessible to visitors are not entitled to the same degree of Fourth Amendment protection as are the interiors of defendants' houses.'" *United States v. Reyes*, 283

---

[2] In her opposition to Shawangunk's motion, Plaintiff implies that the traffic stop was initiated by Donaldson's observation that "Plaintiff's tire had momentarily crossed a yellow line."  Dkt. No. 27 at 12.

F.3d 446, 465 (2d Cir. 2002) (quoting *United States v. Reilly*, 76 F.3d 1271, 1279 (2d Cir. 1996)).

Courts have therefore concluded that "a law enforcement officer's presence on an individual's

driveway when that officer was in pursuit of legitimate law enforcement business" does not violate

the Fourth Amendment. *Id*.; *see, e.g., Lilly v. Hall*, No. 16-cv-242, 2019 WL 275799 at *5

(W.D.N.Y. Jan. 22, 2019) (finding no Fourth Amendment violation when police officers issued a

ticket in the driveway because "[t]hat is precisely the sort of police purpose for which officers may

enter areas reasonably accessible to visitors without implicating the Fourth Amendment."); *Marom*

*v. Town of Hempstead*, No. 14-cv-3005, 2017 WL 5495808 at *6 (E.D.N.Y. Mar. 22, 2017) (no

Fourth Amendment violation for serving valid summons in driveway); J*ackson v. Waterbury*

*Police Dep't*, No. 11-cv-442, 2015 WL 5251533 at *5 (D. Conn. Sept. 8, 2015) (police officers

did not violate Fourth Amendment by engaging in police business in a driveway after making a

traffic stop).

For all of the above reasons, the Defendants' motion to dismiss Plaintiff's Fourth

Amendment claims premised on an illegal stop, false arrest, and or "kidnapping" is granted.

### b.    Fourth Amendment – Excessive Force

Plaintiff alleges that she was "brutally assaulted" by Donaldson during the course of her

arrest.  The Supreme Court has held that "all claims that law enforcement officers have used

excessive force—deadly or not—in the course of an arrest, investigatory stop, or other 'seizure' of

a free citizen should be analyzed under the Fourth Amendment and its 'reasonableness' standard."

*Graham v. Connor*, 490 U.S. 386 (1989). Thus, the Court will analyze Plaintiffs' excessive force

claim under the Fourth Amendment, notwithstanding her reliance on the Eighth Amendment's prohibition on cruel and unusual punishment.[3]

When assessing whether force is unreasonable under the Fourth Amendment, a court should pay "careful attention to the facts and circumstances of each particular case, including the severity of the crime at issue, whether the suspect poses an immediate threat to the safety of the officers or others, and whether he is actively resisting arrest or attempting to evade arrest by flight.'" *Soares v. Connecticut*, 8 F.3d 917, 921 (2d Cir. 1993) (quoting *Graham v. Connor*, 490 U.S. 386, 396 (1989)). In doing so, a court takes the perspective of "a reasonable officer on the scene" rather than that of hindsight. *Brown v. City of New York*, 798 F.3d 94, 100 (2d Cir. 2015) (quoting *Graham*, 490 U.S. at 397).

The Supreme Court's "Fourth Amendment jurisprudence has long recognized that the right to make an arrest or investigatory stop necessarily carries with it the right to use some degree of physical coercion or threat thereof to effect it." *Graham*, 490 U.S. at 396. "The police are not required to utilize the least amount of force possible to place someone into custody." *Brennan v.*

---

[3] Indeed, because Plaintiff was not a convicted prisoner at the time of the underlying incident, any claims purportedly brought under the Eighth Amendment are dismissed for failure to state a claim. *See Hammond v. New York,* No. 1:24-cv-0201 (GTS/PJE), 2025 WL 1369275, at *4 (N.D.N.Y. May 12, 2025) ("The Eighth Amendment's prohibition on the imposition of cruel and unusual punishments applies only to persons who are convicted prisoners[.]"); *Muhammad v. Seiden*, 24-cv-0035 (LEK/ML), 2024 WL 2958723, at *8 (N.D.N.Y. June 11, 2024), *report-recommendation adopted* 2024 WL 3857479 (N.D.N.Y. Aug. 19, 2024) ("[The] protections of the Eighth Amendment only apply to a person who has been criminally convicted and sentenced; they do not apply to the conduct of police officers in connection with the investigation and arrest of suspects prior to conviction and sentencing."); *Smith v. Brown*, 296 F. Supp. 3d 648, 661 (S.D.N.Y. 2017) ("[T]here is no viable claim under the Eighth Amendment's prohibition of cruel and unusual punishment because 'the Eighth Amendment applies only to convicted prisoners.'").

*City of Middletown*, No. 18 Civ. 6148, 2020 WL 3820195, at *7 (S.D.N.Y. July 8, 2020). "The fact that a person whom a police officer attempts to arrest resists, threatens, or assaults the officer no doubt justifies the officer's use of *some* degree of force, but it does not give the officer license to use force without limit. The force used by the officer must be reasonably related to the nature of the resistance and the force used, threatened, or reasonably perceived to be threatened, against the officer." *Sullivan v. Gagnier*, 225 F.3d 161, 165-66 (2d Cir. 2000). Further, "'reasonable force does not become unconstitutional merely because it caused the plaintiff serious injury.'" *Otero v. Town of Southampton*, 194 F. Supp. 2d 167, 180 (E.D.N.Y. 2002) (quoting *Gonzalez v. City of New York*, No. 98-cv-3084, 2000 WL 516682, *4 (E.D.N.Y. Mar. 7, 2000)), *aff'd*, 59 F. App'x 409 (2d Cir. 2003). "Moreover, to support an excessive force claim, the plaintiff must establish that the defendant used more than de minimis force." *Durr*, 558 F. Supp. 3d at 16 (citing *Feliciano v. Thomann*, 747 Fed. App'x 885, 887 (2d Cir. 2019)). "Even conduct that caused some physical pain and resulted in side effects need not be compensated if a jury finds that such injuries were de minimis." *Id.* (citing *Kerman v. City of New York*, 374 F.3d 93, 123 (2d Cir. 2004)). However, regardless of the amount of force, "a show of force by an officer that is overly disproportionate to the risk of harm may support a claim for excessive force." *Id.* (citing *Gersbacher v. City of New York*, No. 1:14-cv-7600, 2017 WL 4402538, *11 (S.D.N.Y. Oct. 2, 2017)).

"At the motion to dismiss stage, it is often difficult for a court to assess whether a complaint's allegation of the degree of force utilized by a law enforcement officer meets the pleading threshold for an actionable claim." *Pesola v. City of New York*, No. 15-cv-1917, 2016 WL 1267797, at *8 (S.D.N.Y. Mar. 30, 2016). Although this case presents a close call, the Court finds that Plaintiff's allegations are narrowly sufficient to plausibly allege a Fourth Amendment excessive force claim for purposes of surviving the motion to dismiss. It is undisputed that Plaintiff

was attempting to evade Donaldson and physically resisting arrest throughout the majority of the incident.  Dkt. No. 1-2 at 2-3.  However, to the extent Plaintiff's Complaint can be construed to allege that Donaldson unnecessarily "threw" her onto the hard pavement and "kneeled on [her] back" to the point that she "could not breath," while "still breaking [her] arm," and after drawing all reasonable inferences in Plaintiff's favor, she has alleged a plausible excessive force claim. Furthermore, any adjudication as to the applicability of the qualified immunity defense would be premature at this juncture, since "[r]esolution of qualified immunity depends on the determination of certain factual questions that cannot be answered at this stage of the litigation." *Denton v. McKee*, 332 F. Supp. 2d 659, 666 (S.D.N.Y. 2004).

Based on the foregoing, Defendants' motion to dismiss the Fourth Amendment excessive force claim against Donaldson is denied.

### c.      Fifth Amendment- Due Process

Plaintiff alleges that she was deprived of liberty and property without due process because she was "threatened with impoundment of her vehicle and subjected to administrative penalties without a hearing or opportunity to contest jurisdiction.  Dkt. No. 43 at 10.  According to Plaintiff's allegations, she was "informed" by the arresting officers that if she drove her automobile on the public road, her car would be impounded.  Dkt. No. 1-2 at 4.

At the outset, because the Fifth Amendment due process clause is only applicable to the federal government, Plaintiff cannot maintain such a claim against Donaldson, a state actor.  *See Dusenbery v. United States*, 534 U.S. 161, 167 (2002) ("The Due Process Clause of the Fifth Amendment prohibits the United States, as the Due Process Clause of the Fourteenth Amendment prohibits the States, from depriving any person of property without due process of law."); *see also Robinson v. Wright*, No. 5:21-cv-1098 (TJM/ML), 2022 WL 2663369, at *3 (N.D.N.Y. Jul. 11,

2022) (plaintiff's Fifth Amendment claims dismissed where no allegations made against any federal official); *Ambrose v. City of New York*, 623 F. Supp. 2d 454, 466-67 (S.D.N.Y. 2009) (holding that any due process claim "against the City is properly brought under the Fourteenth Amendment, not the Fifth Amendment"); *Mitchell v. Home*, 377 F. Supp. 2d 361, 372-73 (S.D.N.Y. 2005) ("The Fifth Amendment's Due Process Clause protects citizens against only federal government actors, not State officials. Any due process rights plaintiff enjoys as against state government officials . . . arise solely from the Fourteenth Amendment due process clause." (internal citations omitted)).

Furthermore, to the extent Plaintiff's allegations may be liberally construed to allege the violation of her due process rights under the Fourteenth Amendment, Plaintiff has not pled facts sufficient to establish that she was actually deprived of any interest, much less that the threatened deprivation implicated due process concerns. *See, e.g., Carter v. Campanelli*, No. 22-cv-2702, 2022 WL 1667022, at *2-3 (E.D.N.Y. May 20, 2022) (finding no due process or other constitutional violations arising from the impoundment of a vehicle with a suspended registration); *Hawthorne by Hawthorne v. Cnty. of Putnam*, 492 F. Supp. 3d 281, 304 (S.D.N.Y. 2020) (noting that where the defendants' impounded the plaintiff's car following a traffic stop the conduct did not implicate procedural due process concerns); *see also Vasquez v. Yadali*, No. 16-cv-895, 2020 WL 1082786, at *12 (S.D.N.Y. Mar. 5, 2020) (noting that the plaintiff fails to allege the inadequacy of any post-deprivation hearings following the impoundment of his vehicle); *Domeneck v. City of New York*, No. 18-cv-7419, 2019 WL 5727409, at *10 (S.D.N.Y. Nov. 5, 2019) (dismissing plaintiff's Fourteenth Amendment claim regarding the deprivation of his vehicle because the plaintiff has not plausibly alleged that the process he received was insufficient).

For all of the above reasons, the Defendants' motion to dismiss Plaintiff's claims alleging a violation of her due process rights is granted.

### d.    Fourteenth Amendment – Conditions of Confinement

The Court liberally construes Plaintiff's allegations that she was refused the opportunity to "exercise [her] bodily functions" for over an hour until she was allowed to use the restroom to raise a claim of unconstitutional conditions of confinement.  Because Plaintiff was merely an arrestee, and not a sentenced prisoner, at the time of the alleged incident, her claim is governed by the Fourteenth Amendment.  *See Darnell v. Pineiro*, 849 F.3d 17, 29 (2d Cir. 2017) ("A pretrial detainee's claims of unconstitutional conditions of confinement are governed by the Due Process Clause of the Fourteenth Amendment, rather than the Cruel and Unusual Punishments Clause of the Eight Amendment.").

"A pretrial detainee may establish a § 1983 claim for allegedly unconstitutional conditions of confinement by showing that the officers acted with deliberate indifference to the challenged conditions." *Darnell*, 849 F.3d at 92.  Two prongs must be satisfied: "an 'objective prong' showing that the challenged conditions were sufficiently serious to constitute objective deprivations of the right to due process, and a 'subjective prong'—perhaps better classified as a 'mens rea prong' or 'mental element prong'—showing that the officer acted with at least deliberate indifference to the challenged conditions." *Id*.

For several reasons, Plaintiff has failed to plausibly allege a violation of her Fourteenth Amendment rights based on the conditions of her confinement immediately after her arrest.  First, Plaintiff has not identified what defendant, if any, was personally involved in the alleged violation. It is entirely unclear from the Complaint who was with Plaintiff at the police station, and Plaintiff does not identify what individuals "refused" to allow her to use the restroom.

Moreover, even if Plaintiff had provided factual details alleging personal involvement, her allegations do not amount to an unreasonable risk of serious damages to her health or soundness, even under the most liberal of interpretations.  Courts in this circuit have consistently found that a deprivation of bathroom breaks over a relatively brief, finite period of time fails to rise to a level sufficient to satisfy the objective prong of Plaintiff's claim.  *See e.g. Amberslie v. Prisoner Transp. Serv. of Am., LLC*, No. 9:17-cv-0564 (TJM/DEP), 2019 WL 1024183, at *13 (N.D.N.Y. Mar. 4, 2019), *report and recommendation adopted,* 2019 WL 1368860 (N.D.N.Y. Mar. 26, 2019) (holding that denial of a restroom for up to seven hours, resulting in detainee having to use a water bottle to relieve himself, along with not receiving three meals a day during a multi-day prisoner transport trip was not unconstitutional); *Walker v. Schriro*, No. 11 Civ. 9299, 2013 WL 1234930, at *12-13 (S.D.N.Y. Mar. 26, 2013) (finding that a two-day confinement without access to "access to food, shower, linens, running water, and a bathroom" did not amount to a constitutional deprivation); *Rogers v. Laird*, 07-cv-668 (LEK/RFT), 2008 WL 619167 (N.D.N.Y. Feb. 8, 2008) ("The temporary deprivation of restroom privileges for a three hour period does not constitute an extreme deprivation of life's necessities." (citation omitted)); *Bourdon v. Roney*, 99-cv-0769 (LEK)(GLS), 2003 WL 21058177 (N.D.N.Y. Mar. 6, 2003) (three-hour deprivation of bathroom privileges did not satisfy objective prong of conditions of confinement claim).  Here, because Plaintiff's claim amounts to, at most, experiencing discomfort until she was permitted to use the restroom "well over an hour" after she arrived at the police station, she has failed to plausibly allege a sufficiently serious condition.

Based on the foregoing, the Defendants' motion to dismiss Plaintiff's Fourteenth Amendment conditions of confinement claims is granted.

## VI.    LEAVE TO AMEND

The only claim surviving the Defendants' motions to dismiss is Plaintiff's Fourth Amendment excessive force claim against Donaldson in his individual capacity.  Under Federal Rule of Civil Procedure 15(a)(2) a court should freely give leave to amend "when justice so requires." *See McCarthy v. Dun & Bradstreet Corp.*, 482 F.3d 184, 200 (2d Cir. 2007). Under Rule 15(a), absent certain circumstances not at play here, a party may amend its pleading only with the opposing party's written consent or the court's leave. *See* Fed. R. Civ. P. 15(a)(1)–(2). A court may, in its discretion, deny leave to amend "for good reason, including futility, bad faith, undue delay, or undue prejudice to the opposing party." *MSP Recovery Claims, Series LLC v. Hereford Ins. Co.*, 66 F.4th 77, 90 (2d Cir. 2023). A request to amend is futile where the problem with the claim is "substantive" and "better pleading will not cure it." *Cuoco v. Moritsugu*, 222 F.3d 99, 112 (2d Cir. 2000).

To the extent Plaintiff asserts a claim arising from 18 U.S.C. § 241, a criminal statute that does not provide a private cause of action, leave to amend such claim would be futile and is therefore denied.  Likewise, any attempt to amend Plaintiff's claim alleging a violation of her constitutional right to travel, and/or premised on frivolous legal theories including those associated with the sovereign citizen movement would be futile and is also denied.

Plaintiff's claims against the State Police and Donaldson in his official capacity are barred by Eleventh Amendment immunity.  As a general rule, a dismissal for lack of jurisdiction must be without prejudice rather than with prejudice.  *Miller v. Brightstar Asia, Ltd.*, 43 F.4th 112, 126 (2d Cir. 2022); *Green v. Dep't of Educ. of City of N.Y.*, 16 F.4th 1070, 1074 (2d Cir. 2021) ("When subject matter jurisdiction is lacking, the district court lacks the power to adjudicate the merits of the case, and accordingly Article III deprives federal courts of the power to dismiss the case with

prejudice.") (internal quotation marks omitted).  It appears to still remain an "open question" in the Supreme Court and the Second Circuit whether a dismissal for sovereign immunity is one for failure to state a claim or one for lack of subject-matter jurisdiction. *See Canfield v. New York*, No. 6:24-cv-1357 (GTS/TWD), 2025 WL 1288747, at *2 n. 5 (N.D.N.Y. May 5, 2025) (identifying Second Circuit cases acknowledging open question).  However, the Second Circuit has routinely affirmed such dismissals based on a lack of subject-matter jurisdiction, without prejudice.  *Id.* at *2 n. 6, 7 (collecting cases).  Furthermore, the Second Circuit recently reversed a dismissal with prejudice based on the doctrine of sovereign immunity, because such a dismissal should have been without prejudice. *See Karupaiyan v. New York*, No. 23-1257, 2024 WL 2174272, at *2 (2d Cir. May 15, 2024) ("[B]ecause the district court lacked jurisdiction over the claims against the State of New York, it was erroneous to dismiss those claims with prejudice rather than without prejudice.").  For these reasons, Plaintiff's claims against the State Police and Donaldson in his official capacity are dismissed without prejudice, but without leave to amend.

Plaintiff's Eighth Amendment claims must be dismissed with prejudice, because the Eighth Amendment applies only to individuals who have been convicted of a crime.  Even liberally construed, no interpretation of the allegations in Plaintiff's Complaint could establish that she was convicted of a crime at the time of the underlying incident.  Likewise, Plaintiff's Fifth Amendment claims must be dismissed with prejudice because that amendment only applies to the federal government, not to state actors such as the Defendants named in the Complaint.

With respect to Plaintiff's remaining claims, the Court has serious doubts that Plaintiff could amend the Complaint to assert actionable claims against the Defendants.  However, in an abundance of caution, given Plaintiff's pro se status, the Court will permit amendment of the Complaint to address the remaining deficiencies detailed above.

## VII.    PLAINTIFF'S EMERGENCY MOTION FOR INJUNCTIVE RELIEF

On September 15, 2025, Plaintiff filed an emergency motion for preliminary injunction in this action, seeking to enjoin the underlying traffic and criminal matters currently pending in state court.  Dkt. No. 46.  As relevant background, Plaintiff filed a notice of removal with the Court on May 23, 2025, seeking to remove the traffic tickets and appearance tickets charging her with violations of the New York Vehicle and Traffic Law and New York Penal Law to this Court.  *See USA v. Keir*, No. 1:25-cr-225 (BKS), Dkt. No. 1.  On July 3, 2025, Chief U.S. District Judge Brenda K. Sannes issued a Memorandum-Decision and Order finding that removal to federal court was inappropriate, and ordering summary remand of the criminal actions back to state court.  *See USA v. Keir*, No. 1:25-cr-225 (N.D.N.Y.), Dkt. No. 9.  Plaintiff moved for reconsideration of and to vacate the remand order, and those motions were denied by Chief Judge Sannes on July 21, 2025.  *Id.* Dkt. Nos. 10, 11, 13.  Plaintiff filed a notice of appeal of the remand order on August 1, 2025, and that appeal is pending before the Second Circuit.  *Id.* Dkt. No. 14; *see also* Dkt. No. 46 at 2.  The instant motion for injunctive relief seeks to enjoin the state court traffic and criminal matters while Plaintiff's appeal in the separate removal action is pending. Dkt. No. 46 at 1-2.

"In general, district courts may grant a preliminary injunction where a plaintiff demonstrates 'irreparable harm' and meets one of two related standards: 'either (a) a likelihood of success on the merits, or (b) sufficiently serious questions going to the merits of its claims to make them fair ground for litigation, plus a balance of the hardships tipping decidedly in favor of the moving party.'" *Otoe-Missouria Tribe of Indians v. New York State Dep't of Fin. Servs.*, 769 F.3d 105, 110 (2d Cir. 2014) (quoting *Lynch v. City of N.Y.*, 589 F.3d 94, 98 (2d Cir. 2009) (internal quotation marks omitted)).  However, "when a court determines it lacks subject matter jurisdiction, it cannot consider the merits of the preliminary injunction motion and should dismiss the action in

its entirety." *Do No Harm v. Pfizer Inc.*, 96 F.4th 106, 120 (2d Cir. 2024) (emphasis omitted).  The district court has wide discretion in determining whether to grant preliminary injunctive relief. *Moore v. Consol. Edison Co. of New York, Inc.*, 409 F.3d 506, 511 (2d Cir. 2005).

Assuming, for purposes of this analysis, that the injunctive relief Plaintiff seeks is even the proper subject of a motion in this action, Plaintiff's request is barred by *Younger* abstention.  The *Younger* doctrine creates "narrow" circumstances under which federal courts' abstention from their "virtually unflagging" obligation "to hear cases within their jurisdiction" is appropriate. *Cavanaugh v. Geballe*, 28 F.4th 428, 430, 432 (2d Cir. 2022) (quoting *Colorado River Water Conservation Dist. v. United States*, 424 U.S. 800, 817 (1976)). Courts may raise the applicability of *Younger* abstention sua sponte. *Torres v. Gaines*, 130 F. Supp. 3d 630, 635 (D. Conn. 2015) (citing *Catlin v. Ambach*, 820 F.2d 588, 591 (2d Cir. 1987)).

The *Younger* abstention doctrine provides that "federal courts should generally refrain from enjoining or otherwise interfering in ongoing state proceedings." *Spargo v. N.Y. State Comm'n on Judicial Conduct*, 351 F.3d 65, 74 (2d Cir. 2003). The doctrine applies in only three "exceptional circumstances" involving: (1) ongoing state criminal prosecutions, (2) certain "civil enforcement proceedings," and (3) "pending civil proceedings involving certain orders uniquely in furtherance of the state courts' ability to perform their judicial functions." *Sprint Commc'ns, Inc. v. Jacobs*, 571 U.S. 69, 70 (2013) (citations and internal punctuation omitted). Where one of *Sprint*'s categories is implicated, *Younger* abstention is required. *See Cavanaugh*, 28 F.4th at 433.

"Younger abstention is required when three conditions are met: (1) there is an ongoing state proceeding; (2) an important state interest is implicated in that proceeding; and (3) the state proceeding affords the federal plaintiff an adequate opportunity for judicial review of the federal constitutional claims." *Diamond "D" Const. Corp. v. McGowan*, 282 F.3d 191, 198 (2d Cir. 2002).

Finally, "even if *Younger*'s prerequisites are satisfied, a federal court may exercise jurisdiction if the plaintiff can make a showing of 'bad faith, harassment or any other unusual circumstance that would call for equitable relief.'" *Lowell v. Vermont Dep't of Child. & Fams.*, 835 F. App'x 637, 639 (2d Cir. 2020), *as amended* (Dec. 15, 2020) (quoting *Falco v. Justices of Matrimonial Parts of Supreme Ct. of Suffolk Cnty.*, 805 F. 3d 425, 427 (2d Cir. 2015)). To demonstrate bad faith, a plaintiff must show that relevant state proceeding "was initiated with and is animated by a retaliatory, harassing, or other illegitimate motive." *Diamond "D" Const. Corp. v. McGowan*, 282 F.3d 191, 199 (2d Cir. 2002). "[T]he party bringing the state action must have no reasonable expectation of obtaining a favorable outcome. *Id*. "A state proceeding that is legitimate in its purposes, but unconstitutional in its execution—even when the violations of constitutional rights are egregious—will not warrant the application of the bad faith exception." *Id*.

Here, Plaintiff's ongoing criminal prosecution is one of the three circumstances contemplated by *Younger. See Sprint Commc'ns, Inc.*, 571 U.S. at 70. The ongoing state criminal prosecution implicates New York State's important interest in enforcing its own criminal laws. *See id*.  Moreover, the state proceeding will afford Plaintiff adequate opportunity for judicial review of her constitutional claims because if Plaintiff is convicted, she can raise her claims on direct appeal or through collateral review. *See Shelley v. Gulotta*, No. 09-cv-4883, 2010 WL 309011, at *2 (E.D.N.Y. Jan. 26, 2010) (finding the *Younger* requirements met for plaintiff with state criminal charges pending); *Miller v. County of Nassau*, 467 F. Supp. 2d 308, 317-18 (E.D.N.Y. 2006) (same)).

The Court has considered whether the "bad faith" exception to *Younger* applies to this case and finds that it does not.  Plaintiff's motion is premised on her allegations that the state court lacks jurisdiction over her, and that "[a]ll traffic citations and misdemeanor complaints" issued in

Plaintiff's name "have been issued to [a] fictitious entity, which does not lawfully exist." Dkt. No. 46 at 3. Plaintiff's frivolous representations do not constitute the "bad faith" necessary for a federal court to intervene. She does not meaningfully allege that the criminal proceedings were initiated by a "retaliatory, harassing, or other illegitimate motive" or any facts supporting such a claim. *See Diamond*, 282 F.3d at 199.

Based on the foregoing, the Court finds that Plaintiff's motion for emergency injunctive relief should be denied pursuant to *Younger* abstention. *See Pawelsky v. Cnty. of Nassau, New York*, 684 F. Supp. 3d 73, 87 (E.D.N.Y. 2023) (abstaining under *Younger* and declining to "reach the issue of the preliminary injunction," where plaintiff's claims were connected to ongoing criminal prosecution); *Graham v. Crim. Ct. of the City of New York*, No. 15-cv-00337, 2015 WL 427981, at *4 (E.D.N.Y. Feb. 2, 2015) (abstaining under *Younger* and dismissing plaintiff's claims for injunctive relief, including "a request to vacate her criminal case and institute a number of actions against members of the criminal court"); *Bacchus v. New York*, No. 13-cv-6847, 2014 WL 580883, at *1-2 (E.D.N.Y. Feb. 13, 2014) (abstaining under *Younger* and dismissing where plaintiff sought to have court dismiss his criminal proceeding); *Lu v. Rocah*, No. 22-cv-9715, 2023 WL 4030015, at *2 (S.D.N.Y. June 15, 2023) (abstaining under *Younger* in light of plaintiff's ongoing criminal prosecution and denying Plaintiff's request for habeas relief).

## VIII.  CONCLUSION

For these reasons, it is hereby

**ORDERED** that Plaintiff's motion for leave to file an Amended Complaint, Dkt. No. 17, is **DENIED,** and it is further

**ORDERED** that Defendant Town of Shawangunk New York's motion to dismiss, Dkt. No. 20, is **GRANTED**, such that the following claims in Plaintiff's Complaint against this Defendant are **DISMISSED**:

(1) Plaintiff's claims pursuant to 18 U.S.C. § 241; the "right to travel freely" pursuant to Article IV, Section 2, Clause 1 of the Constitution; and alleged violations of her Fifth and Eighth Amendment rights under 42 U.S.C. § 1983 are **DISMISSED with prejudice;** and

(2) Plaintiff's remaining claims pursuant to 42 U.S.C. § 1983 are **DISMISSED without prejudice**; and it is further

**ORDERED** that Defendants the State Police and Donaldson's motion to dismiss, Dkt. No. 41, is **GRANTED** in part and **DENIED** in part; and it is further

**ORDERED** that Defendants the State Police and Donaldson's motion to dismiss is **DENIED** as to Plaintiff's Fourth Amendment Excessive Force claim against Defendant Donaldson in his individual capacity; and it is further

**ORDERED** that Defendants the State Police and Donaldson's motion to dismiss is otherwise **GRANTED,** such that the following claims in Plaintiff's Complaint against these Defendants are **DISMISSED**:

(1) Plaintiff's claims pursuant to 18 U.S.C. § 241; the "right to travel freely" pursuant to Article IV, Section 2, Clause 1 of the Constitution; and alleged violations of her Fifth and Eighth Amendment rights under 42 U.S.C. § 1983 are **DISMISSED with prejudice;**

(2) Plaintiff's claims pursuant to 42 U.S.C. § 1983 against the New York State Police and Donaldson in his official capacity are **DISMISSED without prejudice but without leave to renew**;

(3) Plaintiff's remaining claims pursuant to 42 U.S.C. § 1983 are **DISMISSED without prejudice**; and it is further

**ORDERED** that Plaintiff's motions for injunctive relief, Dkt. Nos. 46, 48, is **DENIED**, and it is further

**ORDERED** that any Amended Complaint must be filed within 21 days of the date of this Memorandum-Decision and Order.

**IT IS SO ORDERED.**

Dated: December 1, 2025

Elizabeth C. Coombe
U.S. District Judge